COMMONWEALTH *vs.* MANUEL J. VIERA, JR.

No. 95-P-1667.

Suffolk. May 16, 1996. - August 26, 1996.

Present: KASS, KAPLAN, & LENK, JJ.

*Contempt. Practice, Criminal,* Contempt. *Judge.*

In the circumstances of a criminal case, the judge improperly held the defendant summarily in contempt and sentenced him to confinement after conducting an ex parte pretrial investigation of documentary material and concluding that the defendant's proposed defense of misidentification was a deceit. [207-210]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on November 29, 1993.

A judgment of contempt was entered by *James W. Dolan,* J.

*Thomas J. Doherty (John J. Barter* with him) for the defendant.

*William Matthew Iler, Jr.,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. On November 29, 1993, the defendant, Manuel J. Viera, Jr., appeared for arraignment at Dorchester District Court on a charge against him of possessing a class A substance (heroin) with intent to distribute. He pleaded not guilty and made known that his defense would be misidentification, in detail as follows: the person arrested for the crime on November 27, 1993, was his cousin; the cousin had falsely given his, the defendant's, name to the police upon arrest, and in that name had signed a recognizance and been released thereon; the defendant had rented the automobile in which the cousin was traveling at the time of arrest, and owned the beeper and cellular telephone found in the car, but the cousin had borrowed the car and contents from him. The defendant said the cousin lived in Pawtucket, Rhode Island, but he could not give a better address.

The defendant was later allowed cash bail of $200.

On January 18, 1994, a day appointed for trial, the defendant appeared in Dorchester District Court accompanied by counsel. The judge elicited from the defendant (not on oath) that he persisted in the defense he had stated at arraignment. The judge said, if it turned out that the defendant lied (and was in fact the person who had been arrested), he would hold the defendant in contempt and send him to jail for thirty days.

The defendant left the courtroom to go to a court annex in order to attend to another matter pending against him. Later that day, he appeared again in the courtroom. Meanwhile the judge had undertaken to investigate the question whether the defendant had lied in his purported defense. During the time the defendant was in the annex, the judge obtained and compared the signature on the recognizance form signed by the person who was arrested on November 27, 1993, with the defendant's signatures on an intake indigency report of November 29, 1993, in Dorchester District Court, and a notice to defendant of jury transfer form of November 22, 1993, in South Boston District Court. The comparison, said the judge, satisfied him beyond a reasonable doubt that it was the defendant who signed the recognizance report.[1] As he had promised, therefore — but over vigorous objection and protest on a number of grounds by defendant's counsel — the judge found the defendant guilty of summary contempt and committed him forthwith to jail for thirty days.

Shortly afterward the judge denied the defendant's motion to revise and revoke. Another judge of the court denied the defendant's application for a stay of sentence, but on application to our court the single justice allowed a stay. The defendant appeals from the finding of contempt and the order of commitment.

One can understand the judge's concern that the defendant was deceiving the court, and his indignation when he became convinced that was the defendant's purpose. In his formal findings, dated January 20, 1994, the judge expressed his view that the defendant had attempted to thwart the court's

---

[1] The judge apparently thought the signature on the intake indigency report was somewhat disguised.

"threshold obligation" to decide that the person before the court and to be tried was the person who had been arrested and charged.[2]

However understandable the judge's motive, this was not a proper occasion for an exercise of the summary contempt power which by long tradition is conceived narrowly and used with great restraint. See *Commonwealth* v. *Corsetti,* 387 Mass. 1, 7 (1982). See also *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 35 (1930), cert. denied, 283 U.S. 819 (1931); *Garabedian* v. *Commonwealth,* 336 Mass. 119, 124-125 (1957). In *Crystal, petitioner,* 330 Mass. 583, 589 (1953), Chief Justice Qua adopted the description of summary contempt that appears in *In re Oliver,* 333 U.S. 257, 275 (1948): "The narrow exception to these due process requirements [which are applied in nonsummary contempts] includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." Rule 43 of our Rules of Criminal Procedure, 378 Mass. 919 (1979), entitled "Summary Contempt Proceedings," follows the *Oliver* canon at paragraph (a):

"(a) *Availability of Summary Proceedings.* A criminal contempt may be punished summarily when it is determined that such summary punishment is necessary to maintain order in the courtroom and:

(1) the contemptuous conduct could be seen or heard by the presiding judge and was committed within the actual presence of the court;

(2) the judgment of contempt is entered upon the occurrence of the contemptuous conduct; and

(3) the punishment imposed for each contempt does not exceed three months imprisonment or a fine of five hundred dollars."

---

[2]The judge also suggested a violation of the recognizance, but this would beg the question of who signed it, and anyway there was no delinquency in any court appearance.

The standard case for summary contempt and punishment is that of a party or witness or bystander who behaves boisterously or offensively in open court against the dignity of the court. The present case is far distant from that model and not amenable to rule 43. How can it be said that summary punishment was necessary to maintain order in the courtroom: there was no threat of disorder. Again, at clause· (1) the rule harks back to *In re Oliver*'s requirement that all essential elements of the misconduct shall have been under the eye of the court when misconduct occurred: here the misconduct of lying was established, as the judge might think, only after the judge had engaged in an ex parte investigation of documentary material. See *State* v. *Garcia*, 481 N.W.2d 133, 137-138 (Minn. App. 1992). For further difficulty in applying the rule to this situation, when that element of urgency or immediacy is absent, the lawful procedure, assuming some plausible charge of contempt, is to go under rule 44 and proceed more deliberately, with customary procedural safeguards familiar to ordinary criminal trial. Cf. *Commonwealth* v. *Corsetti*, 387 Mass. at 6-10; *Commonwealth* v. *Segal*, 401 Mass. 95, 98-100 (1987).[3]

It is an anomalous aspect of this case that the finding in contempt that the defendant had lied struck at and compromised the defendant's very defense of misidentification. We need not hazard a generalization that such a coincidence necessarily and in all cases excludes contempt proceedings, but suggest that the judge might well have left the matter to the trial of the criminal charge. Responding to the defendant's proposed defense, the Commonwealth could presumably gather and present such evidence as the judge had obtained, and perhaps more; the defendant could oppose, and justice would be done in the usual course.

We pretermit other questions: did the Fifth Amendment to the United States Constitution forbid the judge to press the defendant to indicate whether he persisted in his defense; did the judge forfeit his impartiality when he personally sought

[3]There are singular cases where a presiding judge, in a position to size up testimony at first hand and in relation to the whole case, may charge a plainly perjurious witness with criminal contempt. But perjury alone is not enough, "there must be the further element of obstruction of the court in the performance of its duty." *Miaskiewicz* v. *Commonwealth*, 380 Mass. 153, 158 (1980). The contempt is evidently treated as nonsummary. *Id.* at 156.

out what he took to be proof of the contempt. *Furtado* v. *Furtado*, 380 Mass. 137, 151 (1980), may be found instructive on the latter question.

A final ironic note: the charge of possession of a class A substance with intent to distribute was dismissed for want of prosecution on March 25, 1994.

> *Judgment reversed.*
>
> *Finding set aside.*
>
> *Judgment is to enter for the defendant.*