JEAN Y. FOLEY *vs.* JAMES J. FOLEY, JR.

No. 88-P-663.

Barnstable. January 12, 1989. — April 25, 1989.

Present: GREANEY, C.J., DREBEN, & PERRETTA, JJ.

*Divorce and Separation*, Division of property, Attorney's fees. *Judge. Value. Witness*, Expert. *Evidence*, Value, Expert opinion. *Probate Court*, Findings by judge.

The record of divorce proceedings presented on appeal did not demonstrate disqualifying bias for the wife on the part of the trial judge. [222-223]

At the trial of a divorce complaint the judge erred in hearing only the wife's experts and not permitting either the husband or any of his experts, whose qualifications were similar to those of the wife's expert witnesses, to give an opinion with respect to the value of the parties' largest asset, a real estate brokerage business; the case was remanded for a new hearing on the value of the business and for redetermination of the property division. [223-225]

The record of divorce proceedings presented on appeal provided no basis for disturbing the trial judge's award of counsel fees to the wife. [225-226]

COMPLAINT for divorce filed in the Barnstable Division of the Probate and Family Court Department on November 9, 1983.

The case was heard by *Shirley R. Lewis*, J.

*Richard D. Packenham* for James J. Foley, Jr.

*Lisa S. Lenon* (*Mark T. Smith* with her) for Jean Y. Foley.

DREBEN, J. In his appeal from the property division portions of a divorce judgment, the husband claims that because of bias on the part of the judge he was deprived of a fair trial, that there was error in failing to qualify any of the husband's expert witnesses, that the award was inequitable, and that the award of counsel fees to the wife was improper. Because we conclude that the failure to allow any of the husband's experts or the husband to testify as to the value of his business was error,

we vacate those portions of the judgment providing for the division of property and remand for a new evidentiary hearing.

1. We first examine the husband's claim of bias on the part of the probate judge. On two occasions, the husband filed motions seeking her recusal. He argues the motions should not have been denied and urges that the judge's unfairness is evident in a number of matters. He places particular emphasis on the granting of a restraining order and attachment prior to trial which, he alleges, caused severe financial problems in his real estate business and resulted in a foreclosure upon one of his properties.

The husband has not supplied a transcript of the two (or perhaps three) days of hearings devoted to this subject, and, in the absence of a record, we cannot assume the judge acted in error. Moreover, if evidence similar to the wife's testimony at trial as to the moving of assets between corporations by the husband and as to false records relating to nonexistent rental agreements was presented to the judge prior to the issuance of the restraining order, orders preventing expenditures and diversion of assets were warranted.

The husband's complaints about other preliminary matters, i.e., that the judge ordered temporary alimony and child support to the wife but refused to hear the husband's complaints about visitation, likewise cannot be reviewed in the absence of an adequate record (lack of transcript).

The judge, as indicated in her findings, disbelieved the husband and was severely critical of his financial dealings. "No doubt [she] in the course of the proceedings below formed a negative impression of [the husband] . . . based on [her] appraisal of [his] performance. But that is not a ground for the assertion of a disqualifying bias." *Perez* v. *Boston Housing Authy.*, 379 Mass. 703, 740 (1980). *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 218 (1986). Although a number of rulings went against the husband, adverse rulings, as he rightly concedes, also do not establish a lack of judicial impartiality. Cf. *Massachusetts Auto. Rating & Acc. Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. 282, 298 (1987).

A review of the voluminous, but nevertheless incomplete, record indicates that this was a difficult and protracted proceeding with at least sixteen separate hearings taking place over a two-year period, that both parties changed counsel,[1] and that counsel were aggressive in their pursuit of what they considered the best interests of their respective clients. The record, despite the various claims of the husband, does not demonstrate disqualifying bias on the part of the judge.

2. The husband's real estate brokerage business in Falmouth was a significant part of the property to be divided under G. L. c. 208, § 34, and, as valued by the judge, constituted the parties' largest asset.[2] An expert witness for the wife testified as to the value of the business, but the experts of the husband, after cross-examination, were found by the judge to be unqualified. The husband, too, was not permitted to give his opinion as to the value of his business.

A comparison of the credentials of the expert offered by the wife and of the two experts offered by the husband set forth in the margin[3] indicates that "there are significant similarities

---

[1] The husband complains that new counsel for the wife was given a continuance but new counsel for the husband was not. The husband's request, however, came the day before scheduled dates for trial.

[2] The husband's business was valued at $337,992.

[3] The wife's expert, a certified public accountant since 1976, had, within a few years prior to trial, valued businesses about a dozen times for sellers and also about a dozen times for buyers. He had made three valuations of a business for divorce proceedings, and five for estate tax purposes. All were closely held businesses, and at least one was a closely held real estate broker's corporation. He had attended seminars concerning the valuation of closely held businesses but had never before testified in court as an expert.

One expert offered by the husband, a certified public accountant for twenty years, had a bachelor's degree from Bentley College, a master's degree from Northeastern University School of Business, and had been a former instructor in taxation at Stonehill College, at Boston University, and in continuing education courses provided by the American Institute of Certified Public Accountants. He had valued between twenty-five and fifty closely held businesses ranging in size from $100,000 to fifteen to twenty million dollars for purposes of sale, for purposes of acquisition, for probate proceedings, and for estate tax valuations. He had valued about three or four closely held real estate brokerage offices, had been qualified as an expert (after cross-examination) in valuing businesses about six to twelve

in the important qualifications of the three witnesses and the differences are relatively unimportant." *Muzi* v. *Common-wealth*, 335 Mass. 101, 104 (1956). That the wife's expert was permitted to testify but the husband's experts were not is explained by the way the case was tried. The husband did not initially object to the qualifications of the wife's expert, and it was only after his testimony was concluded that the husband moved to strike on several grounds, including the witness's lack of qualification. The husband's proposed experts, on the other hand, were subjected to extensive cross-examination, and they were disqualified prior to their testimony.

An appellate court is ordinarily reluctant to find error in the denial of a motion to strike an expert's testimony on a claim of lack of qualification where a judge, not only as a preliminary matter, but also after hearing the testimony, determines the witness to be qualified. A trial judge, after all, has wide discretion in the qualification of experts, *Drake* v. *Goodman*, 386 Mass. 88, 90-91 (1982), particularly where she has had an opportunity to observe the witness give his opinion. We are not suggesting that it was error to qualify the wife's expert, but rather that it was error not to treat witnesses with similar qualifications in the same way.

Here the opinions of the husband's experts and that of the husband himself were all excluded. The husband should have been permitted to testify as to value. *Fechtor* v. *Fechtor*, 26 Mass. 859, 865 (1989).[4] Moreover, the "significant criteria

times, and, six months prior to the *Foley* trial, had been qualified in the Plymouth County Probate Court to appraise a retail rug business. He had also valued a real estate business approximately three or four years prior to the *Foley* trial for purposes of sale and a real estate business in Falmouth approximately five or six years before. He was not a member of an appraisers' organization and had never valued a real estate business for the purpose of testifying as an expert in a court proceeding.

The husband's second expert had been a certified public accountant for thirty-five years, and had valued approximately 350 closely held corporations. He had testified in court as an expert approximately twelve times. He was the accountant for the husband's real estate business.

[4] The husband was well acquainted with his own business, was a real estate appraiser for a municipality of the Commonwealth, and had been qualified in court proceedings as an expert in valuing real estate and businesses.

[which] supported the admission of the testimony of the [wife's expert] . . . also called for the testimony of the [husband's] witnesses." *Muzi* v. *Commonwealth*, 335 Mass. at 106. See *Commonwealth* v. *Seit*, 373 Mass. 83, 91 n.8 (1977).

Because we think it error not to have permitted either the husband or any of his experts to give an opinion as to the value of the business, and because that error may have affected the valuation of the property to be equitably divided as well as the division itself, the portions of the judgment which effect a division of property must be vacated. Accordingly, we need not consider the husband's other claims concerning the division of property.

3. Also challenged by the husband is the judge's award of $35,000 toward the wife's counsel fees. The judge found that the husband's poor record keeping and his moving money from one corporation to another made "it impossible to determine with accuracy his net worth . . . . This conduct of the Husband placed an undue financial burden on the Wife to trace assets and to present evidence during the trial regarding the assets of the marriage and the value of the Husband's business." She also found that the wife had to borrow money from her father to bring the divorce action and "owes thousands of dollars for fees of experts, appraisers and legal counsel incurred as a result of the Husband's conduct." The judge recognized that the standard for awarding counsel fees is "based on conservative principles."

Although the husband concedes that there was a hearing on counsel fees,[5] the record before us does not contain a transcript of that proceeding. In the absence of a transcript, we must assume the award is adequately supported by the evidence, particularly in view of the trial judge's firsthand knowledge of the services performed. See *Pine* v. *Rust*, 404 Mass. 411, 417 (1989).

---

The possible bias of the husband "goes only to his credibility, and is not a reason for exclusion of his testimony." See *Assessors of Pittsfield* v. *W.T. Grant Co.*, 329 Mass. 359, 361 (1952).

[5] At the time of the submission of the husband's brief, appellate counsel, who was not trial counsel, erroneously believed that no hearing had been held.

"In order to review factual findings, we must have a record of all the evidence which was before the judge. The [husband] here has the burden of producing th[e] evidence [as to counsel fees] either by providing a transcript of that hearing, Mass.R.A.P. 8(b), as amended through 388 Mass. 1106 (1983), or a statement of the evidence pursuant to Mass.R.A.P. 8(c), as appearing in 378 Mass. 932 (1979). [He] has not complied with either of these rules. Therefore we are unable to assess whether the judge's findings of fact [as to counsel fees] are clearly erroneous." *Connolly* v. *Connolly*, 400 Mass. 1002, 1003 (1987).

4. Because of our conclusion that expert testimony was erroneously excluded, the matter is remanded to the Probate Court for a new hearing on the value of the husband's business and a redetermination of the property division.[6] Although we find no indication of bias on the part of the judge, we think it appropriate that the hearing on remand be before another judge in this case.[7]

*So ordered.*

---

[6] It does not appear that the husband's appeal challenges either the granting of the divorce or the alimony and child support portions of the order, including those concerning medical insurance. See *Yanolis* v. *Yanolis*, 402 Mass. 470, 472-474 (1988).

[7] We note that newspaper articles report that the husband is active in an organization seeking impeachment of the probate judge who heard the case.